235 So.2d 833

Rosie Louise STRICKLAND

v.

Paul Garron STRICKLAND.

6 Div. 688.

Supreme Court of Alabama.

May 28, 1970.

694

Zeanah, Donald & Lee, Tuscaloosa, for appellee.

Richard A. Thompson, Tuscaloosa, for appellant.

HARWOOD, Justice.

Rosie Louise Strickland filed a bill seeking a divorce from Paul Garron Strickland on the ground of cruelty. She prayed, among other things, for custody of the two minor sons of the marriage, aged 3 and 5.

Paul filed an answer in general denying the allegations in the charging part of Rosie's bill, and also filed a cross-bill praying that a decree of divorce be awarded him. He set up cruelty and adultery as grounds for his bill.

After a lengthy hearing, the Chancellor entered a decree granting Paul a divorce a vinculo on the grounds of cruelty and awarded to him the custody of the two minor children.

We have carefully read and considered the evidence produced in the hearing below. We see no useful result in setting the same out in detail. Suffice to say that there was sufficient legal and material evidence supporting the Chancellor's conclusions and decree in awarding a divorce to Paul on the grounds of cruelty.

The question of the custody of the minor sons undoubtedly was of heart searching concern to the Chancellor. As a broad generalization, it is sometimes set forth that children of tender years will be presumed to fare better with the mother, even though she be not wholly free in the matter of the marriage breakup. McLellan v. McLellan, 220 Ala. 376, 125 So. 225. But each case must be determined on its own facts, and it is settled by our decisions per adventure of doubt that the paramount and controlling consideration in the matter of awarding the custody of a child is the welfare of the child. Beasley v. Beasley, 276 Ala. 247, 160 So.2d 863.

The evidence presented by the appellee tends to show that Paul was 18 years of age and Rosie 15 at the time of their marriage. Within three months of their marriage disagreements and quarrels had set in. For a time the couple lived in the home of Paul's parents. They then procured a two bedroom trailer, placed it near the home of Paul's parents and have lived there since.

Paul earns enough to support his family and did not want Rosie to work. At one time he broke his leg and could not work. He consented that she procure temporary work which she did. She has refused to give up this job where her work hours are from 3 to 11 P.M. Paul's mother tends the children during Rosie's absence at work, and often the children stay in the elder Strickland's home day and night. It appears that Paul's mother has contributed largely to the rearing of the children.

It further appears that for several months prior to the final separation of Rosie and Paul, she and a male co-worker began meeting each other at various secluded places on rural roads, sometimes before starting work, and at other times after completing their work at 11:00 P.M. While Rosie testified that these meetings occurred about twice a week, she denied anything more serious than a few casual kisses took place at these meetings—they met largely to discuss their respective marital difficulties.

The record also shows that Rosie went to her mother and father's home for many weekends, and frequently these visits continued on for a week at a time. The relationship between Rosie's parents and Paul was strained and he was not welcomed by her parents.

There was evidence from which the Chancellor could reasonably infer that Paul was kind to his children and fond of them. He spent time with them, and regularly took them to church when they were with him. He and the boys yet occupy the trailer, and his mother tends them during Paul's absence.

In Fowler v. Fowler, 280 Ala. 305, 193 So.2d 748, a case almost identical in plead-

ing and factual aspects to the present case, the custody of the two infant boys had been awarded to the father. As to this action by the Chancellor, we wrote:

"We neither modify nor disturb the custodial award of the infant boys to their father with rights of visitation on the part of the mother. It would not advance this cause to delineate in whole or in part the many accusations in the evidence that have a bearing on the custody of the children. The accusations, if true, render the mother an unfit person at this time to have the custody of these boys. The trial court heard the evidence touching all the charges of unfitness of the parties to this suit. The trial judge was in a better position than this court to determine which of the conflicting evidence is true or untrue. We are sure that in awarding custody the trial court acted for the best interest and welfare of the children involved. This is the paramount consideration when custody of children is an issue. Alexander v. Davis, 261 Ala. 654, 75 So.2d 614 (1)."

Counsel for appellant contends that the Chancellor committed error in certain instances in his rulings relating to evidential matters.

Reverend Carrol Cochrane, a witness for the appellant, testified on direct examination that Paul's reputation in the community in which he lived was bad.

On cross-examination he testified he did not know where the Stricklands lived in Tuscaloosa County, nor where Paul worked, and that he knew no one who lived in Paul's community. His information had come from Rosie's relatives, and one young man who lived in Kennedy, Alabama.

The court then asked the witness, over appellant's objection, if he had heard anyone in Paul's community say anything about him, to which question the witness replied he had not.

Counsel for the respective parties then announced they had no further questions to ask Mr. Cochrane and he was excused as a witness at the request of appellant's counsel.

Counsel for appellant now argues that Cochrane, by the court's action "was prevented from further elaborating on this point" (the bad reputation of appellee).

We find no support for counsel's contention. This witness was given great leeway in his direct examination. Often his answers were discursive or unresponsive to the questions addressed to him. Certainly, he was in no way hindered in his testimony nor prevented by any ruling of the court from "elaborating" on his testimony.

During the cross-examination of Paul, he was interrogated relative to an instance where he had disciplined one of the children. He was then asked: "Tell the court how this helps a child?"

The court sustained appellee's objection to this question.

The question was palpably faulty in that it called for an answer involving the opinion of the witness; it was too general, and any answer thereto would have been speculative and of no probative force.

Counsel has also argued that the Chancellor erred in overruling appellant's objections to certain other questions.

An examination of the record reveals that the questions in these instances were not in themselves objectionable, though the answers made thereto contained both admissible and unresponsive inadmissible evidence. Appellant's objections were interposed in these instances after the answers had been made. No motions to exclude the objectionable portions of the answers were made.

Where an objection is not interposed until after an answer is made, and the answer, or a portion of it is unresponsive and inadmissible, a motion to strike the answer, or to exclude the objectionable portion, is necessary. Without such motion to exclude, a waiver of the objection-

.able portion of the answer is implied. Thomason v. Odum, 31 Ala. 108; Howell v. Howell, 210 Ala. 429, 98 So. 630; Southern Ry. Co. v. Jarvis, 266 Ala. 440, 97 So. .2d 549; Louisville and N. R. Co. v. Arnold, 42 Ala.App. 463, 168 So.2d 31.

 The evidence presented by the parties was in many aspects contradictory. The Chancellor saw and heard the witnesses testify. He was in much better position to assess the weight of the evidence presented by the respective parties than are we. Such situation compels a presumption in favor of the Chancellor's findings and decree, unless they be palpably wrong. Long v. O'Mary, 270 Ala. 99, 116 So.2d 563; Wilkes v. Wilkes, 270 Ala. 341, 118 .So.2d 906; Anonymous v. Anonymous, 277 Ala. 634, 173 So.2d 797.

We find no basis that would justify our ·concluding that the decree entered in this ·case was palpably wrong or plainly erroneous. The decree is therefore due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON, MERRILL and MADDOX, JJ., concur.