326 So.2d 747

**Lloyd L. O'DELL, Jr.**

v.

**Juanita O'DELL.**

**Civ. 663.**

Court of Civil Appeals of Alabama.

Feb. 4, 1976.

Jones, Arnold & Baddley, Birmingham, for appellant.

Denaburg, Schoel, Meyerson & Ogle and Rodney A. Max, Birmingham, for appellee.

BRADLEY, Judge.

This is an appeal from an order of the Circuit Court of Jefferson County, Tenth Judicial Circuit, denying a former husband's petition to discontinue alimony.

Appellant and appellee were divorced on May 5, 1972. Appellee was awarded $400.-00 monthly alimony, to continue until such time as appellee remarried. On April 9, 1975 appellant filed this petition, requesting that the alimony be discontinued. The petition set forth as grounds for reduction an allegation that appellee had remarried on or before November 1974, and that appellee was currently living with a man who provided her support and maintenance. It is apparent that the remarriage referred to in the complaint was a common-law marriage appellant intended to prove existed between appellee and Olin Wilson, the man with whom appellee was alleged to be living.

Appellee answered, denying the allegations of the complaint and counterclaiming for $1,200 alimony overdue and unpaid.

The matter was heard ore tenus on June 24, 1975, and the trial court issued its de-

cree denying the reduction of alimony and ordering appellant to pay to appellee $1,200 arrearage and $500 attorney's fees.

On appeal appellant argues that he is being compelled to pay alimony to support his former wife in idleness and immorality, and, furthermore, that his wife's cohabitation with Wilson amounts to a common-law marriage, automatically terminating alimony. We disagree and affirm the trial court.

■ The original determination of the amount of an allowance for alimony lies within the discretion of the trial court:

"There is no fixed rule for the determination of the amount of alimony. The amount to be awarded depends upon all the relevant circumstances, in the light of which it must be just and reasonable. [Citation omitted.] These elements are not susceptible of proper enumeration since the court in the exercise of its discretion may and should select or emphasize certain ones appropriate to the facts of the particular case, and since regardless of how exhaustive a list of such factors may be additional ones are constantly making their appearance. [Citation omitted.]" *Garlington v. Garlington,* 246 Ala. 665, 22 So.2d 89.

However, where a decree has set an allowance for alimony, the court will not modify the amount except upon proof of changed conditions which justify the modification, and then only to the extent of such changed conditions, *Block v. Block,* 281 Ala. 214, 201 So.2d 51. Although *Garlington* cautions us to remember that no enumeration can be exhaustive, there is an often-quoted recital of factors to be taken into account by the trial court in its inquiry relevant to modification of alimony:

"  .  .  .    [T]he court may and should inquire into the earning ability of the parties and their probable future prospects, their age, sex, health and station in life; the duration of the marriage, the conduct of the parties with particular reference to the cause of the divorce.  .  .  ." *Block v. Block, supra.*

This list discloses two clearly discernible types of circumstances the trial court must concern itself with in exercising its discretion.

First, the court must not lose sight of certain unchanging factors such as the duration of the marriage, *Hutton v. Hutton,* 284 Ala. 91, 222 So.2d 348. In a modification proceeding, the consideration of such factors is necessary to give the equity court a realistic perspective on the alimonial scheme of the former decree, and to limit its exercise of discretion to dimensions appropriate in light of the qualities of the marriage enjoyed by the parties prior to divorce. In virtually every case, however, these considerations would have been fully accounted for in the original decree, *Hutton v. Hutton, supra.*

On the other hand, the court must be principally concerned with the crucial issue of whether or not there has been a material change in the circumstances of the parties since the entry of the former decree. We are persuaded that the overwhelming weight of Alabama authority is to the effect that changed circumstances in this context means changed financial circumstances.

■ It has been held that the movant for modification has the burden of showing changed financial circumstances, *Brumlow v. Brumlow,* 282 Ala. 170, 209 So.2d 849; where there is an absence of evidence as to the financial status of one party, a modification decree cannot be supported, *Block v. Block, supra;* and where a movant's testimony admits that no financial change has occurred, refusal to modify is proper, *Skipper v. Skipper,* 280 Ala. 506, 195 So.2d 797.

■ Furthermore, it has been reiterated in several cases that the changed health of

a party—one of the traditionally enumerated factors for inquiry—justifies a modification in alimony only where it has resulted in an evidenced change in financial condition, *Steele v. Steele*, 277 Ala. 13, 166 So.2d 790; *Whittle v. Whittle*, 272 Ala. 32, 128 So.2d 92; *Young v. Young*, 262 Ala. 254, 78 So.2d 265. The sound reasoning of this line of cases is equally applicable to every factual condition which might be asserted as changed circumstances: the proper basis for the trial court's exercise of its discretion in alimony modification proceedings is the financial significance of the proofs before it, *Morgan v. Morgan*, 203 Ala. 516, 84 So. 754.

■■ It is clear from the record that the primary thrust of appellant's case was not directed toward a financial analysis of the evidence. The direct financial evidence offered by appellant was minimal and controverted by appellee; appellee and Wilson admitted that on occasion Wilson would spend the night at appellee's apartment, and that there had been instances of sexual intercourse between them. They denied that Wilson lived at her apartment continuously or that he supported her: appellee works as a waitress to supplement her income from alimony. Although the economics of a particular romantic arrangement might submit to discovery and reveal some evidence of a changed financial status for the exspouse involved, post-divorce sexual conduct is not of itself relevant evidence of changed financial circumstances affecting the amount of alimony. The trial court acted within its discretion in denying modification based on this evidence, *Hartsfield v. Hartsfield*, 261 Ala. 386, 74 So.2d 420.

■ Nor is there merit in appellant's argument that the rule allowing reduction of alimony *pendente lite* upon proof of wife's sexual misconduct, *Ex parte Gurganus*, 251 Ala. 361, 37 So.2d 591; *Robertson v. Robertson*, 213 Ala. 114, 104 So. 27, should be extended to the present facts. The crucial

distinction is that alimony *pendente lite* is awarded prior to the dissolution of marriage, whereas, in the instant case, there is no marital relationship remaining, and thus no marital obligation of the wife to the ex-husband.

It is also clear that appellant did not establish that a common-law marriage existed between his former spouse and Olin Wilson.

■ A valid common-law marriage must rest on the mutual consent of the parties to it: a mutual agreement to be husband and wife followed by cohabitation and living together as husband and wife, *Tartt v. Negus*, 127 Ala. 301, 28 So. 713; *Moore v. Heineke*, 119 Ala. 627, 24 So. 374. Above all else, it is the intention of the couple to become husband and wife which must be established: "parties may eat, live, and sleep together as mistress and keeper without any intention of entering into marriage," *Topper v. Perry*, 197 Mo. 531, 95 S.W. 203. Evidence may present objective manifestations from which such intentions may be inferred, *Maryland v. Baldwin*, 112 U.S. 490, 5 S.Ct. 278, 28 L.Ed. 822. In the instant case the evidence does not require reversal of the trial court.

The evidence of occasional cohabitation merely establishes that Wilson and appellee stayed together at her home both night and day. This, without more, establishes only a meretricious and not a matrimonial cohabitation, *Gilbreath v. Lewis*, 242 Ala. 510, 7 So.2d 485.

■ The admitted fact of sexual intercourse does not *per se* prove the existence of a common-law marriage:

" 'If intercourse between persons of opposite sex was illicit in its inception because of their failure to enter into a marriage by ceremony or by agreement, it is presumed to continue so, and the burden of proving a subsequent intermarriage rests on the party asserting it.' " *Gilbreath v. Lewis, supra.*

Nor is this result changed by the evidence of an isolated incident in which Wilson, giving an account of himself to a police officer, referred to appellee as his "wife". The repute of a common-law marriage among friends, associates, acquaintances of the parties, etc., is evidence of a *persuasive* not a conclusive nature, *Maryland v. Baldwin, supra.* We therefore grant the usual presumption of correctness with which the findings of a trial judge hearing evidence ore tenus are favored, *Strickland v. Strickland,* 285 Ala. 693, 235 So.2d 833. Moreover, this single instance is insufficient to show a consensual repute of common-law marriage: it is noteworthy that appellee was out of earshot when the statement was made, and never ratified Wilson's reference to her. Marriage must be based on mutual assent; we see no evidence that appellee ever knowingly allowed herself to be referred to as Wilson's wife.

Appellee has requested that appellant be compelled to pay her attorney's fees incurred on this appeal. It is within our discretion to award reasonable appellate attorney's fees in a case such as this one, *Davis v. Davis,* 274 Ala. 277, 147 So. 2d 828. Due to the outcome of the case and other factors we consider $350 to be a reasonable fee due appellee's attorney for services rendered on appeal. It is ordered that appellant pay this amount.

There being no error in the proceedings below, the decree of the trial court is affirmed.

Attorney's fee granted.

Affirmed.

WRIGHT, P. J., and HOLMES, J., concur.