CRAWLEY, Judge.
J.C. Parker appeals from a judgment of the probate court ordering that he be involuntarily committed to the Alabama Department of Mental Health and Mental Retardation.
Sections 22-52-1.1 through -15, Ala.Code 1975, govern the procedure for involuntary commitments of mentally ill persons. Section 22-52-10.4 provides the following:
“A respondent may be committed to inpatient treatment if the probate court finds, based upon clear and convincing evidence that: (i) the respondent is mentally ill; (ii) as a result of the mental illness the respondent poses a real and present threat of substantial harm to self and/or others; (iii) the respondent will, if not treated, continue to suffer mental distress and will continue to experience deterioration of the ability to function independently; and (iv) the respondent is unable to make a rational and informed decision as to whether or not treatment for mental illness would be desirable.”
At the commitment hearing, Angela Smith testified that her nine-year-old daughter had reported to her that Parker pushed her off his porch and made her hit her head on the cement. Ms. Smith confronted Parker with her daughter’s allegation and Parker, holding a shotgun at his side, replied, “Keep your damn daughter off my porch. Keep all these children off my porch cause I will kill them. I will blow you all up, and I will kill you.”
*312 Mary Anutone, a social worker with the Birmingham Housing Authority, testified that Parker was referred to her because he had been having conflicts with his neighbors. According to her information, Parker had had a physical altercation with one neighbor that involved guns and had hit another neighbor with a stick. Parker was arrested and jailed following one of those incidents. Ms. Anutone learned that Parker had threatened to kill his neighbors if they continued to bother him and throw paper in his yard.
Dr. Lakshmikantha Kumbla, a psychiatrist, testified that Parker was suffering from a recognized mental illness — schizophrenia, paranoid type — and that treatment was available. Dr. Kumbla said that Parker had refused treatment; the psychiatrist gave his opinion that Parker was unable to make a rational and informed decision as to whether treatment was necessary. Dr. Kumbla thought that, without inpatient treatment, Parker would “experience a deterioration of his ability to function independently.” Kum-bla stated that since Parker’s admission to the hospital, Parker had been “hostile towards the staff’ and had had to be secluded or put on “four-point restraints” several times.
Parker’s two sisters testified that their brother had complained to them about his neighbors’ bothering him. They had offered to have their brother come and live with them, but he had refused because, they said, “he trie[s] to be independent.” The sisters stated that Parker had previously seen a doctor for mental problems, but they had never seen him act violent toward anyone. One sister testified that she had eight children and that Parker had never bothered any of her children. She said that “J. C. loves kids.”
Parker told the court that his neighbors, who he said were “mostly on drugs,” bothered him and that he had applied to the Housing Authority for a transfer. He said he could not move in with his sisters because they had so many children and it was too crowded. He stated that he had not harmed Angela Smith’s daughter. He said that, on the day in question, there were several children playing on his porch, swinging on the porch railing, and “making a lot of noise.” He said he asked the children to leave because he “couldn’t get any sleep” and that when one of the little girls refused to release her grip on the porch railing he lifted her up and let her down again. He said that he did not hurt her.
Parker argues that the evidence was insufficient to establish, clearly and convincingly, that he “poses a real and present threat of substantial harm to self and/or others.” He maintains that the testimony regarding his harm to the nine-year-old child was “weak hearsay ... unsubstantiated and uncorroborated by anyone.”
Parker did not raise a hearsay objection below. “Under these circumstances a waiver of [any] objectionable portions of the testimony is implied, and no issue of the hearsay testimony is presented for review.” Miller v. Alabama Dep’t of Pensions & Security, 374 So.2d 1370, 1376-77 (Ala.CivA.pp.1979) (citation omitted). Moreover, we think the mother’s testimony regarding the child’s complaint was admissible under either the “present sense impression” or “excited utterance” exceptions to the hearsay rule. See Rule 803(1) and (2), Ala. R. Evid.
We hold that there was clear and convincing evidence to support the probate court’s order committing Parker. Clear and convincing evidence is not necessarily undisputed evidence. “The adversary context in which involuntary commitment cases arise necessarily envisions the possibility of disputed facts and conflicting evidence.” Dunson v. Christian, 419 So.2d 249, 251 (Ala.Civ.App.1982). The following conclusions, reached by this court in Dunson v. Christian, apply here:
“Appellant denies petitioner’s allegations concerning a recent overt act.... The judge personally heard all of the evidence. With his opportunity to view the witnesses and assess their credibility, the judge was in the best position to resolve disputed testimony. The ore tenus rule applies. We are not authorized to disturb the factual findings contained in the final judgment *313 of the probate court unless clearly and palpably wrong.”
419 So.2d at 251.
Although the evidence regarding Parker’s treatment of the child was disputed, there was no dispute that Parker had threatened Ms. Smith and other neighbors and had been arrested and imprisoned for offenses involving physical violence.
“ ‘To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or another.’ ”
Barms v. Dale, 530 So.2d 770, 781 (Ala.l988)(quoting Lynch v. Baxley, 386 F.Supp. 378, 391 (M.D.Ala.1974), rev’d on other grounds, 651 F.2d 387 (5th Cir.1981)).
The judgment of the probate court is affirmed.
AFFIRMED.
ROBERTSON, P.J., and YATES and MONROE, JJ., concur.