BRYAN, Judge,
concurring specially.
Pursuant to Roe v. Conn, 417 F.Supp. 769, 779 (M.D.Ala.1976), a state must establish that it has a compelling govern *65 mental interest before terminating a parent’s parental rights. Under a strict-scrutiny analysis, the state is required to achieve this objective in a means that is least restrictive or drastic. As the Conn court stated: “The State’s interest, however, would become ‘compelling’ enough to sever entirely the parent-child relationship only when the child is subjected to real physical or emotional harm and less drastic measures would be unavailing.” Id. (emphasis added).
After Conn, this court held that juvenile courts must inquire as to whether viable alternatives to terminating a parent’s parental rights exist during the termination hearing. See Miller v. Alabama Dep’t of Pensions & Sec., 374 So.2d 1370, 1373 (Ala.Civ.App.1979); Glover v. Alabama Dep’t of Pensions & Sec., 401 So.2d 786, 789 (Ala.Civ.App.1981); and In re Shivers, 440 So.2d 1081 (Ala.Civ.App.1983). At the time Miller, Glover, and In re Shivers were decided, the Alabama Juvenile Justice Act (“AJJA”), codified at § 12-15-1, Ala.Code 1975 et seq., was the only statute that governed the termination of a parent’s parental rights. See § 12-15-71(a), Ala. Code 1975; see also D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 89 n. 9 (Ala.Civ.App.2003) (plurality opinion).
In 1984, our legislature enacted the Child Protection Act (“CPA”), codified at § 26-18-1 et seq., Ala.Code 1975. The purpose of the CPA is as follows:
“[T]o provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights in such a manner as to protect the welfare of children by providing stability and continuity in their lives, and at the same time to protect the rights of their parents.”
§ 26-18-2, Ala.Code 1975. Section 26-18-7, Ala.Code 1975, explicitly sets forth grounds for terminating a parent’s parental rights. Citing the CPA, this court stated in In re Colbert, 474 So.2d 1143, 1145 (Ala.Civ.App.1985):
“In order to terminate parental rights, the court must apply what is essentially a two-prong test. First, the court must find from clear and convincing evidence that the child is dependent. § 12-15-65(e), Code of Alabama 1975. See § 26-18-7(a), Code of Alabama 1975; Brown v. Alabama Department of Pensions and Security, [473 So.2d 533 (Ala.Civ.App.1985) ]. Once dependency is found, our court has stated that the trial court must determine whether less drastic measures than termination of parental rights would best serve the interest of the child. See Glover v. Alabama Department of Pensions and Security, 401 So.2d 786 (Ala.Civ.App.1981); Miller v. Alabama Department of Pensions and Security, 374 So.2d 1370 (Ala.Civ.App.1979).”
This court, citing pre-CPA cases in In re Colbert, continued to require juvenile courts to make a determination regarding the dependency of a child and to find that no viable alternatives to termination existed, applying the “two-prong” test in termination-of-parental-rights cases after the CPA was enacted.[3] Our supreme court then articulated the “two-prong” test in Ex parte Brooks, 513 So.2d 614, 617 (Ala.1987). In overruling Ex parte Brooks insofar as it required a parent who sought to terminate the other parent’s parental rights to establish the dependency of a child, our supreme court in Ex parte Beasley, 564 So.2d 950 (Ala.1990), also articulat *66 ed this “two-prong” test. Despite this court’s and our supreme court’s opinions requiring the application of the viable-alternatives prong at the termination proceeding, I agree with Judge Moore insofar as he concludes that there is no basis provided in the CPA or the AJJA for applying the “two-prong” test at the termination proceeding, as suggested in Ex parte Beasley.
In 1997, Congress enacted the Adoption and Safe Families Act (“ASFA”), codified at 42 U.S.C. §§ 671 and 675. Our legislature amended the AJJA in 1998 to comply with federal legislation to receive federal funding. Our legislature amended § 12-15-62, Ala.Code 1975, requiring our juvenile courts to comply with the ASF A. Specifically, § 12-15-62(c) requires juvenile courts to hold a permanency hearing within 12 months of the entry of an order placing a child in foster care. Furthermore, that section states, in pertinent part:
“The permanency hearing shall determine whether the plan will include placement in another planned permanent living arrangement in cases where the department [of human resources] has documented to the court a compelling reason for determining that it would not be in the best interests of the child to return home, be referred for termination of parental rights, be placed for adoption, or be placed with a fit and willing relative, or with a legal custodian.”
(Emphasis added.) As Judge Moore states in his special writing, § 12-15-62(c) requires juvenile courts to determine whether placement of a child with a relative is a viable alternative before the termination-of-parental-rights proceeding, i.e., at the permanency hearing. Requiring juvenile courts to inquire of possible relative placements at this stage complies with the constitutional mandates set forth in Conn. Additionally, I agree with Judge Moore’s determination that a . juvenile court may bifurcate a trial, holding a permanency hearing before the termination proceeding, to consider a relative who presents himself or herself as a possible placement on the eve of a termination proceeding. However, juvenile court’s should consider such relatives only in exceptional circumstances. First, DHR should have already inquired as to possible relative resources and should have conducted an investigation of those relatives before the permanency hearing. Second, a relative who is sincerely concerned about a child’s welfare and is willing to serve as a placement should have already presented himself or herself as a viable alternative. I suggest that juvenile courts consider relatives who present themselves at “the eleventh hour” as a placement option only under extenuating circumstances that would render their untimely presentation justifiable, e.g., when the relative has recently recovered from a debilitating illness that prevented him or her from being a placement option earlier.
Furthermore, “[t]he purpose of imposing a time restriction [in the ASF A] was to shorten the amount of time children would remain in foster care.” A.J.H.T. v. K.O.H., 983 So .2d 394, 403 n. 3 (Ala.Civ. App.2007) (Bryan, J., concurring specially) (citing Katherine A. Hort, Is Twenty-Two Months Beyond the Best Interest of the Child? ASFA’s Guidelines for the Termination of Parental Rights, 28 Fordham Urb. L.J. 1879 (2001)). However, Alabama courts have continued to use the “two-prong” test in termination-of-parental-rights proceedings after the legislature amended the AJJA to include the time provisions of the ASFA. See A.H. v. State Dep’t of Human Res., 763 So.2d 968, 969 (Ala.Civ.App.2000); C.W. v. State Dep’t of Human Res., 826 So.2d 171, 172 (Ala.Civ.App.2002); J.M.O. v. State Dep’t of Hu *67 man Res., 872 So.2d 174, 180 (Ala.Civ.App. 2003); Q.F. v. Madison County Dep’t of Human Res., 891 So.2d 330, 335 (Ala.Civ. App.2004); and J.S. v. St. Clair County Dep’t of Human Res., 969 So.2d 918 (Ala.Civ.App.2007). I believe that inquiring as to viable alternatives to termination — particularly, inquiring as to the suitability of a relative — at the termination hearing is not in the best interest of a child, is not in accordance with the purposes of the ASFA, and does not promote a child’s permanency and stability.
This court has held that “DHR — not the prospective custodian — has the burden of initiating investigations, and it is DHR’s burden to prove the unsuitability of one who seeks to be considered as the custodian of a dependent child.” D.S.S. v. Clay County Dep’t of Human Res., 755 So.2d 584, 591 (Ala.Civ.App.1999). However, in Wilson v. State Department of Human Resources, 527 So.2d 1322, 1324 (Ala.Civ.App.1988), this court held: “In order to establish that termination of parental rights is the least drastic alternative, DHR should present evidence to the court of recent attempts to locate viable alternatives.” (Emphasis added.) See also Bowman v. State Dep’t of Human Res., 534 So.2d 304 (Ala.Civ.App.1988); V.M. v. State Dep’t of Human Res., 710 So.2d 915, 921 (Ala.Civ.App.1998); and C.B. v. State Dep’t of Human Res., 782 So.2d 781, 786 (Ala.Civ.App.1998).[4] Even after the 1998 amendments to the AJJA requiring DHR to present, and the juvenile courts to consider, a permanency plan for a child within 12 months of the entry of a court order placing a child in foster care, this court has continued to require DHR to present evidence of recent attempts to locate a viable alternative to termination. See B.S. v. Cullman County Dep’t of Human Res., 865 So.2d 1188, 1196 (Ala.Civ.App.2003) (acknowledging caselaw argued on appeal stating that DHR has a duty to present evidence of recent efforts to locate a viable alternative); and J.B. v. Jefferson County Dep’t of Human Res., 869 So.2d 475, 478 (Ala.Civ.App.2003) (same).
In my opinion, our juvenile statutes and caselaw regarding viable alternatives should be reconciled in view of the enactment of the CPA and the amendments to the AJJA.
THOMAS, J., concurs.

. Later cases have stated that the determination of grounds for termination pursuant to § 26-18-7 is the first prong of the "two-prong” test and that the issue of dependency is a threshold issue. See Ex parte Beasley, 564 So.2d 950, 954 (Ala.1990).

. The 1998 amendments to § 12-15-62 of the AJJA became effective on April 22, 1998, and were inapplicable at the time this court decided V.M. and C.B.