THOMAS, Judge,
concurring specially.
I agree that the juvenile court’s judgment terminating the mother’s parental rights should be affirmed. The juvenile court concluded that grounds for termination existed and it determined, after a full consideration of possible viable alternatives to termination, that none existed. I write specially to outline the development of our “viable alternatives” jurisprudence and to suggest that it is not in accord with current statutory law and does not facilitate the expeditious resolution of dependency cases.
In recent years, several members of the appellate bench have questioned the soundness of the no-viable-alternative prong of the termination-of-parental-rights test adopted by our supreme court in Ex *355 parte Beasley, 564 So.2d 950 (Ala.1990). See, e.g., A.D.B.H. v. Houston County Dep’t of Human Res., 1 So.3d 53, 64 (Ala.Civ.App.2008) (Bryan, J., concurring specially, joined by Thomas, J.), and 1 So.3d at 67 (Thomas, J., concurring specially), and 1 So.3d at 68 (Moore, J., concurring in part and concurring in the result); M.E. v. Shelby County Dep’t of Human Res., 972 So.2d 89, 101-02 (Ala.Civ.App.2007) (plurality opinion authored by Moore, J.); D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 85-95 (Ala.Civ.App.2003) (plurality opinion authored by Murdock, J.). See also Ex parte A.M.P., 997 So.2d 1008, 1024 (Stuart, J., concurring specially, joined by Smith, J.), 997 So.2d at 1025 (Smith, J., concurring specially, joined by Cobb, C.J., and Stuart, J.); and Ex parte F.P., 857 So.2d 125, 144 (Ala.2003) (Stuart, J., dissenting).
The no-viable-alternative formulation appears to have been derived from Roe v. Conn, 417 F.Supp. 769 (M.D.Ala.1976). In Conn, the federal district court for the Middle District of Alabama, when faced with a challenge to the constitutionality of Alabama’s child-neglect statute, used a strict-scrutiny analysis “to address the ‘compelling state interest’ in alleviating the ‘real and substantial harm’ of a child’s remaining in the custody of an unfit parent.” D.M.P., 871 So.2d at 89 (quoting Conn, 417 F.Supp. at 779-80). The Conn court explained:
“The State’s interest ... would become ‘compelling’ enough to sever entirely the parent-child relationship only when the child is subjected to real physical and emotional harm and less drastic measures tvould be unavailing.”
417 F.Supp. at 779 (emphasis added).
This court later incorporated the less-drastic-measures formulation from Conn into its termination-of-parental-rights jurisprudence. See Miller v. Alabama Dep’t of Pensions & Sec., 374 So.2d 1370 (Ala.Civ.App.1979). In Miller, this court noted that, when the State seeks to terminate parental rights, there are often “less drastic measures than permanent removal of parental custody,” and it listed the following things as examples of less drastic measures:
“returning the child to parental custody on a trial basis subject to certain definite conditions being met and subject to supervision by [Department of Pensions and Security] workers or other trained personnel; or temporary custody in a foster home with specific visitation with the child and conduct requirements to be met by parents; or that the parents are to be deprived of custody temporarily pending a correction of deficiencies in the home environment that were having or would have a harmful effect on the child should the child be placed back in the family relationship.”
Miller, 374 So.2d at 1374. Today, an Alabama court would characterize the Miller court’s list of “less drastic measures” as examples of
“ ‘reasonable efforts ’ ... made to preserve and reunify families prior to the placement of a child in foster care, to prevent or eliminate the need for removing the child from the child’s home, and to make it possible for a child to return safely to the child’s home.”
§ 12-15-65(m), Ala.Code 1975 (emphasis added). See also § 12-15-65(g), AJa.Code 1975, and § 26-18-7(a)(6), Ala.Code 1975. When Miller was decided, however,
“there was (1) no statutory requirement that the State employ the ‘le[ast] drastic measures’ available to remedy a child’s dependency and (2) no statutory requirement that [the Department of Human Resources (‘DHR’) ] make reasonable efforts to reunify a dependent child *356 with its parents before attempting to terminate parental rights.[11]
D.M.P., 871 So.2d at 90.
Under current statutory law, the Department of Human Resources (“DHR”) is required to use reasonable efforts to rehabilitate a parent in order to make it possible for the parent and the child to be reunited. See § § 12 — 15—65(g) and (m), Ala.Code 1975. Accordingly, to the extent that the second prong of the Beasley test addresses matters that are now known as “reasonable efforts,” that prong of the test is superfluous because those matters will already have been addressed in analyzing whether the first prong of the Beasley test has been satisfied. That is to say, in determining whether there are grounds for termination, a juvenile court must consider whether “reasonable efforts by [DHR] or licensed public or private child care agencies leading toward the rehabilitation of the parents have failed,” 26-18-7(a)(6), Ala.Code 1975. In the instant case,
“[t]here was a one-year period following the adjudication of dependency during which DHR attempted to reunite [the mother] and [the child]. DHR prepared an individual service plan (TSP’) addressing [the mother’s] housing and drug problems, but it could not prepare a home study because [the mother] was homeless. [The mother] failed to comply with drug treatment recommended by the ISP; instead, she agreed to the permanent placement of [the child] with B.S. The next year, the trial court with jurisdiction over the dependency petition vested permanent legal and physical custody of [the child] in B.S., with [the mother’s] consent.”
Ex parte T.V., 971 So.2d 1, 3 (Ala.2007).
“Notably, [the mother] never challenge^] the sufficiency of DHR’s reunification efforts in the first 18 months of [the child’s] life. Instead [the mother] argue[d] that DHR should have reinstated those efforts in December 2003, when she filed for visitation and ‘ultimately the return of custody.’ ”
Ex parte T.V., 971 So.2d at 19 (Smith, J., dissenting, joined by Stuart and Bolin, JJ.). Reasonable efforts, deemed under former statutes to be a viable alternative to termination, are now, under current statutes, required as a precondition to termination. Obviously, the meaning of a “viable alternative” has changed over the years.
More recently, the phrase “viable alternative” has come to mean a placement resource for a child who has been removed from his parent — a person or an entity that can serve as a custodian for the child while the parent strives to complete a plan of rehabilitation aimed at ultimate reunification with the child. See, e.g., V.M. v. State Dep’t of Human Res., 710 So.2d 915 (Ala.Civ.App.1998) (recognizing that placing a child with a fit and willing relative is a viable alternative to terminating parental rights).
As Judge Moore pointed out in his special writing in A.D.B.H. v. Houston County DepaHment of Human Resources, su *357 pra, however, our statutory law has, since 1998, required the juvenile court to determine before the termination-of-parental-rights adjudicatory proceeding whether placement of a child with a relative or other suitable custodian is a viable alternative to termination. A.D.B.H., 1 So.3d at 68 (Moore, J., concurring in part and concurring in the result). Section 12-15-62(c), Ala.Code 1975, requires that determination to be made at a permanency hearing.
“When the legislature amended the Alabama Juvenile Justice Act (‘the AJJA’), Ala.Code 1975, § 12-15-1 et seq., in 1998 to comply with the Adoption and Safe Families Act (‘the ASFA’), 42 U.S.C. § 671 and § 675, it mandated that juvenile courts hold a permanency hearing to determine a child’s disposition within 12 months of the date the child first entered foster care. See Ala. Code 1975, § 12-15-62(c). In a permanency hearing, the juvenile court is to ‘determine’ which of several custodial arrangements — return to the parent, referral for termination of parental rights and adoption, or placement with a relative or other legal custodian — ‘shall be’ the permanency plan. Id. The purpose of requiring the 12-month permanency hearing is to comply with the policy behind the ASFA to ensure ‘that children are provided a permanent home as early as possible.’ Kurtis A. Kemper, Annotation, Construction and Application by State Courts of the Federal Adoption and Safe Families Act and Its Implementing State Statutes, 10 A.L.R.6th 173, 193 (2006).
“Based on the plain language of § 12-15 — 62(c), a juvenile court must, in a permanency hearing, determine the issues of whether a ‘fit and willing’ relative— i.e., someone who is ‘qualified to receive and care for the child,’ § 12-15-71(a)(3)c. — exists and whether placement with that relative serves the best interests of the child. Otherwise, the juvenile court could not make a determination as to whether relative placement should be the permanency plan for the child as required under § 12-15-62(c). Hence, the AJJA now expressly states that the determination of the viability of relative placement should take place in a proceeding separate from the hearing to determine whether grounds for termination of parental rights exist.
“Section 12-15-62(c) specifically requires a juvenile court to hold at least one permanency hearing within 12 months of when the child enters foster care; however, nothing in the law prohibits a juvenile court from holding more than one permanency hearing. Thus, if, after the original permanency hearing, an interested party asserts that a material change of circumstances has occurred and that the permanency plan in effect is no longer in the best interests of the child, a juvenile court may conduct another permanency hearing for the purposes of reviewing the permanency plan and, if appropriate, modifying it. For example, if an interested party asserts on the eve of the termination hearing that placement with a relative has become a viable alternative due to intervening circumstances occurring since the last permanency hearing, the juvenile court may order another permanency hearing to immediately precede the hearing on the termination of parental rights. Upon proper notice to the parties, the juvenile court may bifurcate the trial by deciding, first, in the dependency action, the viability of relative placement, i.e., whether the relative is ‘fit and willing’ and ‘qualified to receive and care for the child’ and whether such placement would serve the child’s best interests, and then, if still *358 necessary, deciding, second, in the termination action, whether grounds for termination exist. However, under no circumstances does § 12-15-62(c) authorize a juvenile court to determine the question of the viability of relative placement during the adjudicatory phase, which is dedicated solely to determining whether grounds for termination exist.”
A.D.B.H., 1 So.3d at 69-70 (Moore, J., concurring in part and concurring in the result) (emphasis added; footnotes omitted). In the instant case, the juvenile court did what § 12-15-62(c) requires. It held a permanency hearing in December 2000, and, with the mother’s consent, it “vested permanent legal and physical custody of [the child] with B.S.” Ex parte T.V., 971 So.2d at 3. Following Judge Moore’s A.D.B.H. analysis, the mother’s 2004 motion for additional visitation rights and a return of custody could be deemed a motion for review and modification of the permanency plan.
I believe that the manner in which Alabama appellate courts have been addressing the second prong of the Beasley test neither comports with statutory requirements nor facilitates the expeditious resolution of dependency cases. Even if this court were to reassess and to overrule, if necessary, our own prior decisions that require — at a termination-of-parental-rights adjudicatory proceeding — clear and convincing proof that there is no viable alternative to the termination, we have no authority to overrule decisions of the Alabama Supreme Court. See § 12-3-16, Ala.Code 1975. I urge our supreme court to reevaluate its prior decisions with respect to the second — no-viable-alternative — prong of the Beasley test in light of the Alabama Juvenile Justice Act, § 12-15-1 et seq., Ala.Code 1975, and the Child Protection Act, § 26-18-1 et seq., Ala. Code 1975.
BRYAN, J., concurs.

“11 The [Child Protection Act], with its reference to ‘reasonable efforts ... toward the rehabilitation of the parents,’ see Ala.Code 1975, § 26-18-7(a)(6), was enacted in 1984, well after Miller was decided. As originally enacted, Ala. Code 1975, § 12-15-65 did not contain the current subsections (g) and (m), which discuss DHR’s obligation to make reasonable efforts to preserve and reunify families under most circumstances. Subsection (g) was added in 1995, see Ala. Acts 1995, Act No. 95-545, and subsection (m) was added in 1998. See Ala. Acts 1998, Act No. 98-372.”