This is a case involving custody of children. The Circuit Court of Madison County found two children, one five years old and the other one month old, to be dependent children within the meaning of Code of Ala. 1975, § 12-15-1 (formerly Tit. 13A, § 5-101, Code of Ala. 1940).
The trial court awarded permanent custody and the legal guardianship of the children to be the Department of Pensions and Security. Additionally, the trial court's order permanently terminated the parental rights of the mother.
From this decree, the natural mother appeals and presents the following issues: 1. Does the evidence support the trial court's action in awarding custody to the Department of Pensions and Security? 2. Was the mother denied due process of law when the petition seeking permanent custody of one of the children was not served until the day before the hearing?
Viewing the testimony with the attendant presumptions, we find the following: Phillip and Kathy, the children involved, were, at the time of the trial, ages five years and one month, respectively. Each child was fathered by a man not married to Linda Lovell. The mother has been divorced once and her current husband is presently in jail.
Since 1969, the Department of Pensions and Security in Jackson and Madison Counties has been working with the mother in an attempt to bring about a stable home for the children. The training of the mother in basic household skills and parenting-skill training sessions conducted by the Department of Pensions and Security have proved to be unsuccessful.
The mother is mentally retarded. Her full-scale I.Q. has been established at 52. There was testimony from a licensed psychologist to the effect that the mother would need someone to assist her in the areas of housekeeping and mothering. Furthermore, the assistance required would be long-term and extend to "all things we take for granted every day that we do in organizing our lives."
The record further reveals the oldest child, Phillip, has been subjected to neglect and abuse. This was evidenced in a report by the Madison County Department of Pensions and Security which set out instances of dehydration, bruises on the body of the child, and a general description of the home life in which many of the adults drank excessively.
During the time the mother was approximately eight months pregnant with her youngest child, Kathy, she stayed out late at night on numerous occasions with her cousin, a prostitute. On one of these occasions, the mother and her cousin were questioned by the police concerning solicitation although no charges were brought nor solicitation proven concerning the appellant-mother.
Furthermore, the mother has no means of support notwithstanding her social security and AFDC payments. Over the past nine months, she has lived in six different residences.
The record also reveals that the mother does not have a place in which to raise the children besides the homes of relatives. As noted above, the evidence shows that their homes do not offer any improvement in that excessive drinking, drugs and overcrowded conditions predominate.
At the outset, as indicated above, we note the oft stated rule that decrees of the trial court in child custody cases, rendered after hearing witnesses ore tenus, will be given every favorable presumption and will not be disturbed unless palpably wrong. See Strickland v. Osborn, Ala.Civ.App., 333 So.2d 582
(1976); 12 Ala.Dig. Infants 19.3 (7).
The controlling consideration in child custody matters is the best interest of the child. See State Department of Pensions *Page 190 and Security v. Hornbuckle, Ala.Civ.App., 336 So.2d 1372
(1976); 12 Ala.Dig. Infants 19.2 (2). It therefore follows that while the parent has a prima facie right to the custody of a child, this right is not absolute and must yield to the superior criterion of the child's welfare.
Viewing the evidence as set out above, with the above stated principles in mind, this court can hardly find that the trial court was palpably wrong in finding that the best interest of the children was served by their permanent custody being placed with the Department of Pensions and Security.
For cases where even less evidence than is presented here has been held sufficient to sustain a decree of the trial court awarding custody of a minor to the Department of Pensions and Security, see Smith v. State Department of Pensions andSecurity, Ala.Civ.App., 340 So.2d 34 (1976); Harrell v. Long,49 Ala. App. 322, 272 So.2d 248 (1973).
Able counsel for the mother, in an excellent brief, alludes to the contention that the Department of Pensions and Security did not meet its burden of showing that measures less drastic than removal of permanent custody from the mother would be unavailing. Appellant relies on Roe v. Conn, 417 F. Supp. 769
(M.D.Ala. 1976), as its authority.
The trial court, in determining the best interests of the children, looks at several factors. Less drastic measures than permanent removal of custody from the mother is such a factor the trial court should consider. The fact that the Department of Pensions and Security itself takes into consideration many factors in determining the best interest of the child, including less drastic measures than attempting removal of permanent custody, is evidenced by the following statement made by the Department of Pensions and Security at the temporary custody hearing of Kathy:
 "[I]f there are any other resources available that the Department is not aware of now that Mrs. Lovell would believe would be a proper resource with whom to place this child, we would like to be aware of it so we can conduct an investigation according to law into that resource. We would like to give her any possible benefit that we can."
As noted above, the mother does not have an adequate environment in which to raise the children. The mother offers a plan in which she would marry an ex-alcoholic, twice divorced man, who suffers from a nervous condition. Such an arrangement would be purely speculative as to the future living conditions and would not be in the best interest of the children as the trial court correctly held.
In any event, we would point out that while the trial courts of Alabama, in determining the best interest of the children, should look to viable alternatives before terminating parental rights, the criteria as set out in Roe v. Conn, supra, is not binding on this court. See Smith v. State Department ofPensions and Security, supra.
Lastly, the appellant contends she was deprived of due process of law in that she was not served with the petition for permanent custody of Kathy until the day before the hearing and that this prevented appellant from adequately preparing to protect her interest.
The record reveals that the temporary custody hearing of Phillip Lee took place on June 28, 1976. Likewise, Kathy's temporary custody hearing was on 18-19 January 1977. After the court awarded temporary custody of Kathy to Department of Pensions and Security, the court stated the following:
 "The case is reset then for further hearing on February 10th at ten o'clock, at which time the Welfare will have completed its investigation and will be able to offer proof to the Court and be ready to accept either temporary or permanent custody of the child, depending on the evidence presented at that time, and depending on whether or not there is a change of circumstances between now and then. But at that time, February 10th, 1977, at ten o'clock, I will hear the case of both Phillip Lee and Kathy Michelle Lowell." *Page 191 
This court, speaking through Judge Bradley, in Thorne v.Thorne, Ala.Civ.App., 344 So.2d 165 (1977), stated that:
 "Although the state has a compelling interest in determining the best interest and welfare of a child, the interest is not compelling enough to allow the determination to be made without notice to the child's parents. The purpose of requiring notice is to preserve the fairness of the hearing; and it is of vital importance to the child, as well as the parent, that the hearing be fair. A parent must have notice of the issues the court will decide in order to adduce evidence on those issues before the court, to give the court a basis from which a determination most beneficial to the child can be made. Otherwise, the child, rather than being helped, might even be harmed."
As noted above, the appellant had notice on January 19, 1977, that the hearing would involve the issue of permanent custody of both Phillip and Kathy. The hearing took place on February 10. While this was not an abundance of time, we cannot say it was so inadequate as to constitute a denial of due process.
The issues involved, concerning the permanent custody of Phillip, were substantially the same as those concerning permanent custody of Kathy. Here, the appellant was given due notice of the issues to be presented and she was given the opportunity to be heard. In view of this, it is clear to this court that the appellant was not deprived of due notice and that due process considerations were followed by the trial court in every respect. See Thorne v. Thorne, supra; Ex parteWhite, 245 Ala. 212, 16 So.2d 500 (1944).
Along the same line, appellant questions the propriety of the action of the Department of Pensions and Security in taking Kathy from the mother, without a prior hearing, on January 14, 1977, which was just two days after the child's birth. The supreme court, in Ex parte White, supra, quoted from 39 Am.Jur. 604, § 17, as follows:
 "`Due process, however, does not in every case require that the determination of the parent's right to the custody of his child must precede any interference therewith. The child may be taken from his custody provisionally by a summary proceeding, so long as an adequate remedy is available by which the parent may afterward have his rights presented to a proper tribunal. . . .'" (245 Ala. at 215, 16 So.2d at 503)
Here again, we do not perceive a due process violation in that the mother was afforded a hearing on January 18, 1977, in which to have her rights to the child presented.
All issues having been duly considered, the case is due to be and is affirmed.
AFFIRMED.
WRIGHT, P.J., and BRADLEY, J., concur.