MOORE, Judge,
concurring in the result.
At this point in our jurisprudence, the origin of the “viable alternatives” prong of the Ex parte Beasley, 564 So.2d 950 (Ala.1990), test is well-documented. See D.M.P. v. State Dep’t of Human Res., 871 So.2d 77, 85-92 (Ala.Civ.App.2003) (plurality opinion); N.J. v. Madison County Dep’t of Human Res., 980 So.2d 997, 1001 (Ala.Civ.App.2007) (plurality opinion); and Ex parte F.P., 857 So.2d 125, 144 (Ala.2003) (Stuart, J., dissenting). In summary, the “viable alternatives” requirement stems from the recognition that the Due Process Clause of the United States Constitution protects the fundamental rights of parents to the care, custody, and control of their children by precluding states from completely and permanently severing those rights when “less drastic measures” can be implemented. See Roe v. Conn, 417 F.Supp. 769, 779-80 (M.D.Ala.1976). Accordingly, as Ex paite Beasley later stated it, a juvenile court may terminate parental rights only after it has considered and rejected all viable alternatives to termination.
Even before this principle was first applied in an Alabama appellate court opinion, the legislature had adopted the 1975 Alabama Juvenile Justice Act (“the AJJA”). See Ala. Acts 1975, Act No. 75-1205, p. 2384, which is still in effect, as modified, today. See Ala.Code 1975, § 12-15-1 et seq. In Lovell v. Department of Pensions & Security, 356 So.2d 188 (Ala.Civ.App.1978), and Miller v. Alabama Department of Pensions & Security, 374 So.2d 1370 (Ala.Civ.App.1979), this court concluded that the legislature had incorporated the concept of “viable alternatives” *359 into the AJJA by giving juvenile courts the power to choose among several disposition options to protect the welfare of a dependent child, see Ala.Code 1975, § 12-15-71, including the authority to make any order that the juvenile court deems to be in the welfare and best interests of the child. Ala.Code 1975, § 12-15-71(a)(4).
Although it is true that § 12-15-71 does acknowledge the authority of the juvenile court to dispose of the custody of a dependent child in any number of ways other than termination of parental rights, the AJJA does not expressly mandate that the juvenile court refrain from terminating parental rights if some other less drastic alternative is viable. Instead, the AJJA states that the juvenile court may make any disposition order that protects the welfare of the child and serves the best interests of the child. See Ala.Code 1975, § 12-15-71 (a) & § 12 — 15—71(a)(4). Nothing in the language of the AJJA implies that if the child would be protected and its best interests served by a termination of parental rights, a juvenile court must nevertheless analyze the other statutory options before proceeding to a hearing to terminate parental rights. If anything, the Lovell and Miller courts read that requirement into the AJJA to assure its constitutionality. See Almon v. Morgan County, 245 Ala. 241, 246, 16 So.2d 511, 516 (1944) (“A statute may be enacted without containing [a] provision for constitutional requirements but in such terms as not to exclude them and to justify the court in holding that it was intended to be subject to those requirements, which should then be treated as a feature of it.”).
In 1984, the legislature adopted the Child Protection Act (“the CPA”), Ala. Acts 1984, Act No. 84-261, p. 442, which is now codified at Ala.Code 1975, § 26-18-1 et seq. The predominant purpose of the CPA is to “provide meaningful guidelines to be used by the juvenile court in cases involving the termination of parental rights.” Ala.Code 1975, § 26-18-2. The CPA states, in pertinent part:
“If the court finds from clear and convincing evidence, competent, material, and relevant in nature, that the parents of a child are unable or unwilling to discharge their responsibilities to and for the child, or that the conduct or condition of the parents is such as to render them unable to properly care for the child and that such conduct or condition is unlikely to change in the foreseeable future, it may terminate the parental rights of the parents.”
Ala.Code 1975, § 26-18-7(a). As has been repeatedly pointed out, the CPA does not explicitly require a juvenile court to consider all other viable alternatives as a prerequisite to the termination of parental rights. See D.M.P. v. State Dep’t of Human Res., 871 So.2d at 85; Ex parte F.P., 857 So.2d at 144.
However, the legislature has also declared that one of the fundamental purposes of the juvenile courts is “to preserve and strengthen the child’s family” and “[t]o reunite a child with his or her parents as quickly and safely as possible when the child has been removed from the custody of his or her parents.” Ala.Code 1975, § 12-15-1.1(1) & (3). Pursuant to those goals, § 26-18-7(a)(6) specifically requires juvenile courts, when determining whether to terminate parental rights, to consider whether reasonable efforts undertaken by state agencies to rehabilitate the parent have failed. Section 26-18-7(b) also requires juvenile courts to consider the parent’s lack of effort to adjust to the child’s needs in accordance with agreements reached with state agencies in administrative and judicial reviews. The entire thrust of these provisions is to assure that, before a juvenile court severs the relation *360 ship between a parent and a child, reasonable efforts have been made to correct those parental deficiencies that led to the breakup of the family. See J.B. v. Jefferson County Dep’t of Human Res., 869 So.2d 475 (Ala.Civ.App.2003) (plurality opinion).
Furthermore, in order to comply with the federal Adoption and Safe Families Act of 1996, see H.H. v. Baldwin County Dep’t of Human Res., 989 So.2d 1094, 1098 (Ala.Civ.App.2008) (plurality opinion), the legislature has declared that, except in cases involving aggravating circumstances, see Ala.Code 1975, § 12-15-65(m)(l)-(4), a juvenile court may order that a dependent child be removed or kept from the custody of a parent only on the condition that the court find that reasonable efforts to reunite the family have been or will be undertaken or that such efforts have failed. See Ala.Code 1975, § 12-15-25(g). Obviously, a judgment terminating parental rights is an order immediately, permanently, and irrevocably divesting the parent of custody of the child, see C.B. v. State Dep’t of Human Res., 782 So.2d 781, 785 (Ala.Civ.App.1998) (“termination of parental rights is an extreme action that cannot be undone; it is permanent”), so a juvenile court must comply with § 12-15-25(g) when entering such a judgment.
The constitutionality of the present statutory scheme has not been addressed in any opinions. Presumably, because this court and our supreme court continue to apply the viable-alternatives prong of the Beasley test to eases brought under the CPA, a majority of the members of our appellate courts believe that that standard should be read into the CPA in order to assure its constitutionality. Thus, even though the CPA expressly requires the juvenile court to consider only one viable alternative — rehabilitation of the parent— it is implied that the juvenile court must consider all viable alternatives before terminating parental rights, which would include permanent placement with a relative or other individual qualified to receive and care for the child, see Ala.Code 1975, §§ 12-15-71(a)(3)c. & 12-15-62(c), with or without visitation rights reserved to the parent, depending on the best interests of the child. See Ala.Code 1975, § 12-15-71(a)(4).
With that said, nothing in the constitution prohibits the legislature from establishing the procedure by which viable alternatives are to be identified and evaluated so long as the legislature adequately protects the constitutional rights of parents. Since 1998, see Ala. Acts 1998, Act No. 98-372, p. 677, § 1., the AJJA has required juvenile courts to conduct at least 1 permanency hearing no less than 12 months from the date a dependent child enters foster care in order to establish the custodial disposition that best serves the interests of the child. See Ala.Code 1975, § 12-15-62(c). Once the permanency plan is established, the juvenile court must use reasonable efforts to implement the plan as soon as practicable. Id. As this court recently held, in enacting this provision, the legislature intended that 12 months is a presumptively reasonable time for a juvenile court to assess the success of the efforts of the parent to rehabilitate and to assess the reasonableness of efforts to reunite the family. See M.A.J. v. S.F., 994 So.2d 280 (Ala.Civ.App.2008). Under § 12-15-62, a juvenile court must still protect the substantive due-process rights of parents by assuring that all viable alternatives to termination ax-e explored; however, they must do so on a expedited timetable in a specific hearing separate from the hearing to terminate parental rights. See A.D.B.H. v. Houston County Dep’t of Human Res., 1 So.3d 53, 68 (Ala.Civ.App.2008) (Moore *361 J., concurring in part and concurring in the result).
In this case, the child was declared dependent due primarily to the mother’s inability to care for the child because of drug abuse. The juvenile court placed the child in the temporary custody of B.S. while the Department of Human Resources (“DHR”) exerted reasonable efforts to reunite the mother with the child. At the end of one year, the mother had not overcome her drug problem, so the juvenile court placed the child in the permanent custody of B.S., granting the mother visitation “as may be from time to time agreed upon between [the mother and B.S.].” In other words, the juvenile court held a permanency hearing, determined that it was in the best interests of the child to remain in the custody of B.S. without terminating the parental rights of the mother, and further determined that some visitation with the mother would be in the best interests of the child. The juvenile court implemented its plan forthwith by entering a judgment consistent with its findings. Thereafter, DHR ended its involvement in the case. If the mother had had any complaint about the reasonableness of DHR’s efforts to reunite the family, the finding that her efforts to rehabilitate had been unsuccessful, the placement of the child with B.S. without consideration of other relatives, or the terms of her visitation, the mother’s remedy was to appeal the judgment entered after the permanency hearing. Otherwise, those issues were finally determined, subject only to the power of the juvenile court to modify custody or visitation based upon a material change of circumstances affecting the best interests of the child. See Ala.Code 1975, § 12-15-32; Heller v. Heller, 558 So.2d 961 (Ala.Civ.App.1990); and A.D.B.H., supra.
In 2004, the mother filed a petition to modify visitation and custody. In response, B.S. filed a counterclaim seeking to terminate the mother’s parental rights. The juvenile court terminated the mother’s parental rights based upon clear and convincing evidence demonstrating that the mother was unable to discharge her parental responsibilities to and for the child. See Ex parte T.V., 971 So.2d 1, 5-7 (Ala.2007). However, the juvenile court did not require DHR to reinitiate reasonable efforts to reunite the mother with the child, did not consider placing the child with the mother’s relatives, and did not consider maintaining the status quo. Based on these perceived errors, the supreme court reversed the judgment. Ex parte T.V., 971 So.2d at 7-10.
I believe the juvenile court did not err in failing to order DHR to become involved in the case again. DHR’s duty to use reasonable efforts to reunite the family is triggered by removal of the child from the parental home, see Ala.Code 1975, § 12-15 — 65(g), not the filing of a petition to terminate parental rights. By the time B.S. filed her petition to terminate the mother’s parental rights, DHR had long ago discharged its statutory duty to use reasonable efforts to reunite the mother with the child by working with the mother for more than one year after the child was removed from the custody of the mother to assist the mother in overcoming her drug problem. The juvenile court had already determined that reasonable efforts at reunification had failed when it awarded permanent custody of the child to B.S. The filing of the petition to terminate the mother’s parental rights did not restart the reunification process or require a reexamination of the earlier reunification efforts. Nothing in the law requires the juvenile court to order extraordinary efforts, such as restarting reunification efforts years after reasonable efforts had failed.
*362 Furthermore, once the juvenile court placed the child with B.S. and B.S. assumed proper care of the child, the child was no longer dependent and in need of state supervision. See S.P. v. E.T., 957 So.2d 1127, 1131 (Ala.Civ.App.2005) (“Under ideal circumstances, such final disposi-tional orders coincide with the end of the child’s dependency, i.e., the child has a proper custodian ‘and,’ is no longer ‘in need of care or supervision’ by persons other than the custodian. See Ala.Code 1975, § 12-15-1(10)n.”). DHR should not become involved unless its services are necessary to protect the welfare of the child. The filing of a petition to terminate the rights of a noncustodial parent by a proper custodian does not indicate that a child is in need of protective services.
I also believe the juvenile court did not err in failing to consider placing the child with the mother’s relatives. If the mother had relatives who were qualified to receive and care for the child and willing to assume the child’s custody, the time and place for evaluating the possibility of placing the child with those relatives would have been years earlier at the permanency hearing. See A.D.B.H., supra. If the juvenile court failed to properly consider relative placement, which, based on the peculiar facts of this ease, I do not believe happened, that mistake was subject to correction on appeal of the permanency judgment. The filing of the petition to terminate the mother’s parental rights did not revive that issue.
However, the juvenile court did initially commit reversible error by deciding that maintenance of the status quo was not in the child’s best interests without receiving sufficient evidence to support that finding. When the mother filed her petition to modify visitation and custody, she, in essence, asserted that the permanency plan implemented by the juvenile court was no longer serving the best interests of the child and that it would now be in the child’s best interests to increase the mother’s visitation and/or to award her custody. Before proceeding to a hearing on the counterclaim to terminate the mother’s parental rights, the juvenile court should have conducted a hearing on the mother’s petition to modify the permanency plan. See A.D.B.H., supra. At that hearing, the juvenile court would not have been considering whether grounds for termination existed; rather, it would have been deciding solely whether the permanency plan should be modified according to the best-interests standard. Id.
Instead, the juvenile court proceeded to a hearing on the counterclaim to terminate the mother’s parental rights. That hearing produced some testimony and a recommendation by the guardian ad litem indicating that it was in the child’s best interests to remain in the custody of B.S. with visitation by the mother. B.S. did not counter that testimony with any evidence indicating that the child’s best interests would not be served by continuing the custody arrangement initially approved by the juvenile court. Nevertheless, the juvenile court terminated the mother’s parental rights. It appears that by proceeding directly to the hearing to terminate the mother’s parental rights, the juvenile court overlooked its responsibility to first consider whether the permanency plan in place continued to serve the child’s best interests.
On remand, the juvenile court conducted a best-interests hearing. In that hearing, B.S. introduced sufficient evidence indicating that it was no longer in the child’s best interests to maintain the status quo. The mother had gone so long without exercising her visitation rights that the child did not know who the mother was or that she was his mother. The expert testimony was clear and consistent that it would be disruptive and traumatic to the child to *363 reintroduce the mother to the child as his mother. Dr. Blanchard testified that it would be even worse to conceal the mother’s true identity from the child. Both Dr. Blanchard and Pam Locke, the counselor, basically testified that, absent concern for the legal rights of the mother, they perceived no reason to justify continued visitation between the mother and the child. Since it is the child’s best interests that control the propriety of a permanency plan, see Ala.Code 1975, § 12 — 15—62(c), the juvenile court correctly determined that maintaining the status quo was not a viable alternative.
The juvenile court also allowed DHR to intervene in the case and offer its services. The mother did not contact DHR at all after the remand because she did not believe DHR’s services were necessary. In addition, the juvenile court considered extensive testimony regarding the mother’s relatives, all of which indicated that the relatives were not qualified to receive and care for the child, as the juvenile court found. The juvenile court thus fully complied with the remand order of the supreme court; therefore, I concur in the affirmance of the juvenile court’s judgment.